The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. As a result of her injury on 16 February 1994, defendants paid plaintiff temporary total disability compensation at the rate of $256.43 per week from 17 February 1994 to 4 April 1994.
2. The issues for decision are: A) What conditions are related to plaintiff's accident of 16 February 1994 or her employment with defendant-employer, and; B) What benefits is plaintiff entitled to receive?
EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Andrew are OVERRULED.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a married female with one adult child. Plaintiff resided in Four Oaks, North Carolina. Plaintiff was a certified nurse's aid. On 16 February 1994, plaintiff was employed by defendant-employer to provide home care for a patient who lived in Selma, North Carolina.
2. The patient who plaintiff cared for suffered from multiple sclerosis and was paralyzed from his waist down. The patient weighed 240 pounds. His home was not specially equipped for his physical disability. At the time of her injury, plaintiff was caring for the patient seven days per week, ten hours per day. Plaintiff performed light house work, purchased the patient's groceries, transported him to doctors' appointments, prepared his meals, assisted him with his medications and helped him to bathe.
3. On 16 February 1994, plaintiff was attempting to assist the patient out of his bathtub when she felt a sudden pain in her left fingertips that extended up her arm to her elbow. As a result of the pain, plaintiff dropped her patient. During the remainder of the day, plaintiff had pain in her arm, with increased swelling. The following day, plaintiff was unable to work due to pain and swelling in her hand.
4. Thereafter, plaintiff presented to Dr. deLeon with pain, tingling and swelling in her hands. Dr. deLeon referred plaintiff to Dr. Hull. On 25 March 1994, plaintiff had numbness in her left ring and small fingers, left hand swelling and diminished hand strength. Plaintiff also had left hand pain that was provoked by lifting or placing her hand on the steering wheel of her car. As a result of these symptoms, plaintiff had difficulty grasping and holding objects.
5. Dr. Hull recommended that plaintiff wear a brace on her left hand and restricted her from repetitive or strenuous activity with her left arm. He also restricted her from activity which would place pressure on her left elbow.
6. On 12 April 1994, plaintiff presented to and was examined by Dr. Andrew. On that date, plaintiff was capable of performing clerical type duties in an office setting. Dr. Andrew suspected plaintiff may experience difficulty with hand coordination when performing clerical duties. Plaintiff was restricted from active patient care, particularly lifting heavy patients.
7. Plaintiff's symptoms were caused by bilateral carpal tunnel syndrome and a left ulnar neuropathy. Plaintiff's bilateral carpal tunnel syndrome and ulnar neuropathy preexisted her employment with defendant-employer. Plaintiff's ulnar neuropathy caused the numbness in plaintiff's left ring and small fingers as well as the weakness in her left hand and arm. Plaintiff's carpal tunnel syndrome was not caused or aggravated by the incident on 16 February 1994. Plaintiff's ulnar neuropathy was aggravated by the incident on 16 February 1994.
8. As a result of her hand weakness and numbness, plaintiff was afraid to drive an automobile. When plaintiff did drive an automobile, her symptoms worsened. However, plaintiff was not restricted from driving as a result of those symptoms. Plaintiff was restricted from driving as a result of a sleep disorder which was not caused or aggravated by her employment with defendant-employer.
9. On 13 May 1994, defendant-employer offered plaintiff work as a nursing assistant caring for a patient who lived in Fuquay-Varina, North Carolina. The offered work hours were Monday through Friday, from 8:30 a.m. to 4:00 p.m., and Saturday and Sunday from 10:00 a.m. to 2:00 p.m. Plaintiff declined this offer of employment.
10. On 17 May 1994, defendant-employer offered plaintiff work as a nursing assistant for a patient who resided in Angier, North Carolina. This patient required care for six hours per day, seven days per week. On the same date, defendant-employer offered plaintiff employment caring for another patient who resided in Angier, North Carolina. This patient required care for four hours per day, seven days per week. Plaintiff declined both of these offers of employment.
11. The evidence of record is insufficient to prove by its greater weight that plaintiff was capable of caring for any of the patients in Fuquay-Varina and Angier.
12. As a result of her injury on 16 February 1994, plaintiff was rendered incapable of earning wages from defendant-employer, or any other employer, from 17 February 1994 and continuing through the date of the hearing in this case.
******************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 16 February 1994, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. As a result of her injury on 16 February 1994, plaintiff is entitled to payment of temporary total disability compensation at the rate of $256.43 per week from 17 February 1994 and continuing until order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. N.C. Gen. Stat. § 97-29; Radica v. Carolina Mills,113 N.C. App. 440, 439 S.E.2d 185 (1994).
3. Defendants are entitled to a credit against the compensation due plaintiff for the temporary total disability compensation paid to plaintiff from 17 February 1994 to 4 April 1994.
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of the aggravation of her ulnar neuropathy on 16 February 1994, for so long a such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-2 (19).
******************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $256.43 per week from 17 February 1994 and continuing until order of the Industrial Commission allowing defendants to cease payment of temporary total disability compensation. To the extent that this amount has accrued, it shall be paid to plaintiff in a lump sum, subject to the credit due defendant under paragraph 2 and the attorney's fee approved in paragraph 4.
2. Defendants shall received a credit against the compensation due plaintiff for the temporary total disability compensation paid to plaintiff from 17 February 1994 to 4 April 1994.
3. Defendants shall pay all medical expenses incurred as a result of plaintiff's aggravation of her ulnar neuropathy on 16 February 1994, for so long a such examinations, evaluations and treatments tend to effect a cure, give relief or will tend to lessen her period of disability.
4. A reasonable attorney's fee of twenty five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's attorney and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
5. Defendants shall pay the costs, including $450.00 to Dr. Kolkin as an expert witness fee.
 S/ ______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/rst
6/10/97